**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**FREDERICK T. RAY, III,**                    :

      **Plaintiff**                    :        **CIVIL ACTION NO. 3:20-1697**

**v.**                    :               **(JUDGE MANNION)**

**PAMELA MCDONALD,** *et al.*,                    :

      **Defendants**                    :

**<u>MEMORANDUM</u>**

**I. <u>BACKGROUND</u>**

      Plaintiff, Frederick T. Ray, an inmate formerly confined at the State Correctional Institution, Dallas ("SCI-Dallas"), Pennsylvania[1], originally filed the above caption civil rights action, pursuant to 42 U.S.C. §1983, in the Luzerne County Court of Common Pleas. (Doc. 1). By Notice of Removal dated September 18, 2020, the Defendants removed the above captioned action to the United States District Court for the Middle District of Pennsylvania. Id. The named Defendants are Mary Jo Mather, Executive Director of the Pennsylvania Certification Board, and the following SCI-Dallas employees ("DOC Defendants"): Superintendent Kevin Ransom,

---

      [1] Plaintiff is currently housed at the Phoenix State Correctional Institution, Collegeville, Pennsylvania.

Pamela McDonald, Louise Cicerchia, Mr. Kilheeney, Kelly McAndrews, Captain Brozowski, Deputy Miller, Deputy Cronauer, Michael Goyne, Major Jason Bohinski, Captain Lukashenski and John/Jane Does. Id. Plaintiff seeks compensatory and punitive damages for alleged First and Fourteenth Amendment violations. Id.

Presently before the Court is the Defendants' motions to dismiss Plaintiff's complaint. (Docs. 7, 11). The motions are ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion to dismiss, in part, and deny the motion, in part.

## II. Allegations in Complaint

Plaintiff alleges that he "was employed as a Certified Peer Specialist (CPS) from May 2018 to March 2019." (Doc. 6, Complaint).

On August 13, 2019, Plaintiff was transferred to SCI-Dallas "as an unemployed Certified Peer Specialist." Id. He claims is "transfer was due to a 'staff-separation' and completely unrelated to his CPS employment at SCI-Smithfield," as his employment as a CPS at SCI-Smithfield was not terminated due to a staff misconduct" and "Plaintiff did not receive any misconduct reports while employed in his capacity as a CPS." Id. He states

that his "employment was terminated for filing a 'declaration' as witness in another inmate's civil action against SCI-Smithfield staff." Id.

Although Plaintiff was an unemployed CPS confined at SCI-Dallas, he states that "the Pennsylvania Certification Board (PCB) required Certified Peer Specialists to obtain 36 additional training hours for re-certification every two years." Id. Plaintiff's certification was due to expire in June 2020 and he had "already acquired half of the required re-certification training hours prior to transfer to SCI-Dallas." Id.

Plaintiff states that he "sent a request slip to his counselor on I Housing Unit Defendant Kilheeney for information about receiving the mandatory re-certification training hours" and "Defendant Kilheeney replied that Plaintiff was not eligible for re-certification training because Plaintiff received misconduct reports while employed as a CPS at SCI-Smithfield." Id.

Plaintiff, believing that he "never received misconduct reports while employed as a CPS at SCI-Smithfield," sent Defendant Kilheeney "follow up correspondence informing him he has been misinformed about Plaintiff receiving misconducts while employed as a CPS and included documents proving his competence as a CPS." Id.

On December 31, 2019, in response to Plaintiff's inquiry, "Defendant Kilheeney summoned Plaintiff to the staffing room at the rear of the housing

- 3 -

unit" and "when Plaintiff entered, Defendants Cicerchia and McDonald and Mrs. Zoltewics were present." Id. Plaintiff alleges that Defendant Cicerchia "began the meeting by admonishing Plaintiff: 'Don't ever question what we do or our reasons for not doing something. We don't owe you anything. You're just an inmate, stay in your place.'" Id. Plaintiff replies that he is "always going to question misinformation or falsehoods in [his] records" and that he has "a right to complain" and Defendants "can't tell [him] to stop complaining." Id. Defendant McDonald "then aggressively interjected yelling at Plaintiff: 'I am the CPS supervisor and I'm telling you now, you will never, ever, be a CPS at SCI-Dallas. Don't ever question us!'" Id. As Plaintiff "was about to respond to Defendant McDonald, Defendants Cicerchia and Kilheeney began berating Plaintiff and ordered him to leave the staffing room." Id. Before leaving, Plaintiff "requested Kilheeney return his documents." Id. Defendant Kilheeney "denied the request on grounds they were keeping them to use for CPS de-certification." Id. Plaintiff states that "Defendant Kilheeney's statement was confirmed by Defendant Miller in response to Plaintiff's grievance #843286 requesting the return of the documents" in that "Plaintiff's grievance was granted in part and his documents were returned; however, Plaintiff's appeal of denial of other relief

- 4 -

was subsequently denied including final review by the Secretary's Office of Inmate Grievances and Appeal (SOIGA)." Id.

Plaintiff believes that "the above incident became the predicate and motivation of Defendants Cicerchia, McDonald and Kilheeney's collusion and conspiracy to revoke Plaintiff's CPS certification in retaliation for complaining about being denied access to re-certification training." Id.

Plaintiff claims that his "grievance #844054 for being denied re-certification training was denied including all of Plaintiff's subsequent appeals for final review by SOIGA." Id.

On January 5, 2020, Plaintiff sent Defendant McDonald "a request complaining about being denied re-certification training and asked for a policy-based reason for denying the training." Id. Plaintiff alleges that "in retaliation for Plaintiff's complaint, Defendant McDonald solicited revocation of Plaintiff's CPS certification from the Pennsylvania Certification Board." Id.

On January 6, 2020, Defendant Kilheeney summoned Plaintiff to the staffing room and gave him a copy of correspondence sent to Defendant McDonald from Defendant Mary Jo Mather, Executive Director, Pa. Certification Board, "informing Defendant McDonald that Plaintiff's CPS certification has been revoked based soley (sic) on the information and allegations made by Defendant McDonald." Id. Defendant Mather "did not

- 5 -

provide Plaintiff any notice of charges, evidence in support of charges, an opportunity to be heard and present a defense or an adjudication of facts supporting reason for revocation of certification, nor did Defendant Mather state which CPS Code of Ethics rule that was violated warranting revocation of certification." Id. Thus, Plaintiff concludes that "Defendant Mather's revocation was manifestly arbitrary and capricious in violation of Plaintiff's substantive rights of due process." Id.

On January 7, 2020, Plaintiff claims he was moved to "B housing unit per orders of Unit Manger Defendant Cicerchia" and "was informed of the housing transfer just minutes after he received the pink processing copies of grievances" in five grievances he filed against Defendants Cicerchia, Kilheeney, McAndrews and McDonald alleging "retaliation, racism, deliberate indifference toward mental health and breach of communication with psychology staff." Id. Subsequent to the filing of these five grievances, Plaintiff filed nine additional grievances between January 17, 2020 and April 15, 2020, challenging his removal as a CPS, alleged retaliation by Defendants, alleged issuance of false reports, and Defendants' alleged failure to respond to his grievances. Id.

On March 24, 2020, Plaintiff claims he was issued Notice of Confinement-Other Report #D237799 and "a retaliatory misconduct report

#D471903" which resulted in his placement in "solitary confinement and referred it to the Hearing Examiner." Id. The misconduct, issued by Defendant McDonald, alleged the following facts:

> Inmate Ray was given a direct order by Captain Brozowski to not send my any additional request slips related to his CPS certification being revoked. He was advised that he would receive a misconduct if he did so. On this date and time, inmate Ray again sent me a request slip in direct violation of a direct order not to do so, resulting in the above misconduct. Request slip was written on 3/20/20 and received by P. McDonald on 3/24/20.

Id. On March 26, 2020, Plaintiff appeared before Hearing Examiner McKeown for his misconduct hearing" and was "exonerated by the Hearing Examiner" of misconduct report #D471903. Id. Plaintiff, claims, however, that even though he was exonerated, he remained in administrative custody pursuant to Other Report #D37799, which Plaintiff claims resulted in his transfer on May 4, 2020. Id. Thus, Plaintiff concludes that "since [he] did not receive any misconduct reports while confined at SCI-Dallas, Defendants McDonald, Miller, Cronauer, Bohinski and Goyne used McDonald's false reports coupled with Plaintiff's antiquated and stale misconduct history from previous commitments to create a false narrative and platform to disguise their retaliatory motive for transferring Plaintiff to another prison." Id.

Thus, Plaintiff filed the instant action, raising First Amendment claims of retaliation for filing grievances, Fourteenth Amendment claims of denial of

substantive and procedural due process with respect to the revocation of his CPS certification, his CPS prison job and confinement in administrative custody and a conspiracy claim regarding the revocation of his CPS certification and transfer. Id.

## III. MOTION TO DISMISS

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."

- 9 -

See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## IV. DISCUSSION

### A. First Amendment Retaliation Claims

Due to the inherent issues of security within a correctional institution, prisoners do not have a constitutionally protected right to remain at a particular facility, or housing unit within a facility. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983).

However, moving or transferring an inmate in retaliation for exercising his constitutional rights itself is a violation of the Constitution. See White v.

Napolean, 897 F.2d 103, 111 – 12 (3d Cir. 1990); see also Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (holding that the relevant question in a retaliation case is not whether Plaintiff had a "protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right.").

"Retaliation against a prisoner for the exercise of his constitutional rights is unconstitutional." Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prisoner officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks and citations omitted); see also Watson v. Rozum, No. 13-3510, 2016 WL 4435624, at *4 (3d Cir. Aug. 23, 2016) (same). If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate he would have taken the same action even if the plaintiff had not engaged in the protected activity. See Rauser, 341 F.3d at 334.

The filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court. Anderson v. Davila, 125 F.3d 148, 161

(3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). Likewise, the submission of grievances is also constitutionally protected conduct. See Mitchell, 318 F.3d at 530.

Plaintiff alleges that Defendants retaliated against him for filing grievances by revoking his CPS certification, transferring him to a different cellblock, placing him in solitary confinement, issuing false misconducts against him and ultimately transferring him from SCI-Dallas. (Doc. 6).

In Allah v. Seiverling, 229 F.3d 220, 224–25 (3d Cir. 2000), the Third Circuit held that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." (quoting Thaddeus–X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (*en banc*)). Thus, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. See Rauser, F.3d at 333.

Thus, although Plaintiff has no constitutional right to his job, Rhodes v. Chapman, 452 U.S. 337, 348 (1981), and no constitutionally protected liberty interest in being incarcerated in any particular prison, see Olim v. Wakinekona, 461 U.S. 238, 245 & n. 6, (1983), retaliation for the exercise of his constitutional right is itself a violation of the Constitution. See White v.

- 12 -

Napoleon, 897 F.2d 103, 111–12 (3d Cir. 1990). Furthermore, the Third Circuit has expressly held that "termination of prison employment constitutes adverse action sufficient to deter the exercise of First Amendment rights, satisfying the second element of a retaliation claim at [the motion to dismiss] stage of the litigation." Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017) (citations omitted) (finding that amended complaint also adequately alleged a causal link between his provision of legal assistance and his job removal). Likewise, in Allah v. Seiverling, 229 F.3d at 225, the Third Circuit found that placement in administrative segregation may be sufficient to deter a person of ordinary firmness from exercising his or her First Amendment depending upon the facts of the case. See id. (finding that allegations that plaintiff was kept in administrative segregation for several months where he had reduced access to phone calls, reduced access to the commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance was sufficiently adverse). For these reasons, the Court denies the DOC's motion to dismiss Plaintiff's First Amendment retaliation claims at this stage of the proceedings.

## B. <u>Due Process Under the Fourteenth Amendment</u>

### i. <u>Administrative Custody</u>

Plaintiff pleads that Defendants' conduct violated his Fourteenth Amendment due process rights. In support of their Motion to Dismiss, DOC Defendants argue that Plaintiff's placement in administrative custody does not present the type of "atypical and significant" hardship that implicates a Fourteenth Amendment liberty interest. (Doc. 8 at 5). Based on this, they argue the Fourteenth Amendment claim should be dismissed.

In response, Plaintiff argues that Defendants violated his due process rights because they did not grant him adequate notice and a hearing to continue his placement in the RHU. (Doc. 30).

As the United States Court of Appeals for the Third Circuit has explained:

> Procedural due process rights are [only] triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.E.2d 418 (1995). In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement. <u>See id</u>. at 468, 115 S.Ct. 2293; <u>Shoats v. Horn</u>, 213 F.3d 140, 144 (3d Cir. 2000).

<u>Huertas v. Sec'y of Pa. Dep't of Corr.</u>, 533 F. App'x 64, 66 (3d Cir. 2013).

Applying these benchmarks, it has been held that detention in administrative custody for brief periods of six months or less do not impose the type of atypical and significant hardships on inmates which trigger due process protections. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest); Torres v. Fauver, 292 F.3d 141, 151–52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest).

Upon review, the DOC Defendants' motion to dismiss should be granted as to Plaintiff's Fourteenth Amendment claim. The Court first considers whether Plaintiff's confinement in the RHU implicates any liberty interest. The United States Court of Appeals for the Third Circuit has held that "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the type of 'atypical' deprivation of prison life necessary to implicate a liberty interest." Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (citing Sandin, 515 U.S. at 486). Courts have routinely held that periods of disciplinary confinement of up to fifteen months do not implicate due process concerns. Powell v. McKeown, No. 1:20-cv-348, 2021 WL 2400773, at *7 (M.D. Pa. June 11, 2021) (citing, e.g., Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010); Smith, 293 F.3d at 653; Griffin

v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997)).

In this case, Plaintiff states that on March 24, 2020, he received two misconduct reports, #D237799, Other Report and #D471903, Refusing to Obey an Order. (Doc. 6). Plaintiff states that on March 26, 2020, he was exonerated of misconduct report #D471903 and when the hearing examiner inquired as to the status of #D237799, Plaintiff claims that Defendant Brozowski stated "his investigation has not concluded." Id. Thus, Plaintiff remained in the Administrative custody "for a mandatory 15 days per policy DC-ADM 802." Id. On April 7, 2020, Defendant Superintendent Ransom granted Defendant Brozowski an additional 15 days to investigate as mandated by DC-ADM 802. Id. Plaintiff states that on April 29, 2020, at the conclusion of Defendant Brozowski's investigation, he received Other Report #471763, Notice of Confinement, which Plaintiff claims stated:

> This will serve as your notification of confinement in accordance with DC-Adm 802 Section 1.B.1.A wherein you are in danger from another person and/or are a danger to some person(s) in the facility and protection cannot be achieved by alternate measures.

Id. On May 6, 2020, Plaintiff claims that he had his PRC hearing for Other Report #471763 and "Defendants Miller, Cronauer and Bohinski continued Plaintiff in AC status pending transfer." Id. Plaintiff's appeals to Defendant Ransom and final review to the Chief Hearing Examiner were denied. Id.

In this case, while Plaintiff argues that he did not immediately receive a hearing upon being placed in administrative custody on March 24, 2020, he admits that he did finally receive a PRC meeting on May 6, 2020. Because Plaintiff's confinement in administrative custody for approximately two months before receiving a hearing does not implicate a protected liberty interest, his failure to receive a hearing during this time does not violate his right to due process. Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997)). Accordingly, we find that Plaintiff received all the process he was due with respect to his Administrative Custody placement.

Further, to the extent that Plaintiff asserts a due process claim because his grievances were misdirected, this claim also fails. It is well settled that prisoners do not have a constitutional right to a grievance procedure. See Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")); see also Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (holding the alleged obstruction of grievance procedures by a prison official did not give rise to an independent §1983 claim). Nor do prisoners have a liberty interest protected by the due process clause in the grievance procedures. See Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013) (citing Antonelli v. Sheahan, 81 F.3d 1422,

1430 (7th Cir. 1996) (holding state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)).

In addition, an inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for §1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable); see also Cole v. Sobina, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Indeed, as to such claims, the Third Circuit has held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011) (citing Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir. 1973)).

Thus, Plaintiff was not deprived of any process that was due to him

under these circumstances. Plaintiff's own allegations establish that he availed himself of the prison grievance procedures and, although he may not agree with the outcome of his grievances or how they were handled, his complaints were aired in the designated forum and assessed by the appropriate officials. The corresponding level of investigation into these grievances has no bearing on the success of his constitutional claims. See Alexander, 144 F. App'x 924 (involvement in post-incident grievance process not a basis for §1983 liability). Therefore, to the extent Plaintiff asserts a Fourteenth Amendment claims alleging inadequate prison grievance procedures, this claim will be dismissed.[2]

---

[2] Expanding on the Court's discussion herein, the Court finds that Plaintiff's claims relating to Defendant Goyne failing to provide a copy of a document to him (Doc. 6 at ¶¶ 81-82), Defendant Captain Lukashenski reviewing a report others wrote (id.at ¶ 85), Defendant Deputy Miller not properly responding to his grievances (id. at ¶¶ 59, 146), and Defendant Superintendent Ransom's review of grievances and appeals (id. at ¶ 80) entitles these Defendants to dismissal from Plaintiff's complaint for lack of personal involvement or *respondeat superior*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citations omitted). Personal liability under §1983 cannot be based upon the theory of *respondeat superior*; rather, it must be shown through the defendant's personal involvement. Id. In the context of prison cases, it is not sufficient to allege that an individual participated in a review of a grievance or an appeal after-the-fact. See generally Rode at 1208; see also Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (noting that a claim of inappropriate response to an inmate's grievances does not establish "personal involvement on the part of . . . prison officials and administrators[]").

For the foregoing reasons, the Court will grant the DOC Defendants' motion to dismiss Plaintiff's Fourteenth Amendment due process claim with respect to Plaintiff's placement in administrative custody.

### ii. CPS certification and CPS prison job

To implicate protections under the Due Process Clause of the Fourteenth Amendment, a state actor must deprive the plaintiff of either a property interest or a liberty interest. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). All Defendants seek dismissal of Plaintiff's Due Process claim because neither the loss of his CPS certification or his CPS prison job implicate a liberty or property interest protected under the Fourteenth Amendment.

The deprivation of liberty for the incarcerated requires due process protections only if the deprivation imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472 (1995). The determination of what is "atypical and significant" depends on the range of conditions an inmate would reasonably expect to encounter. See Asquith v. Dep't of Corrs, 186 F.3d 407, 412 (3d Cir. 1999). Property interests are created and defined from a source independent of the Constitution, "such as state law." Roth, 408 U.S. at 577, 92 S. Ct. 2701.

- 20 -

"[T]here is no liberty interest in a prison job arising from the Due Process Clause." Presbury v. Wenerowicz, 472 F. App'x. 100, 101 (3d Cir. 2012) (citation omitted). Nor is there "a protected property interest in [a] prison job which would support a due process claim." Id. (citation omitted); see also James v. Quinlan, 866 F.2d 627, 629–30 (3d Cir. 1989) (holding that inmates have no liberty or property right to a prison job under the Fourteenth Amendment); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975) ("We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause."); Fidtler v. Pa. Dept. of Corr., 55 Fed. Appx. 33, 35 (3d Cir. 2002) ("[W]e have held that a state inmate does not have a liberty or property interest in prison employment"). Because there is no liberty or property right to a prison job, the Court finds it axiomatic that there a no liberty or property right to the certification that is a prerequisite for the prison job. All Defendants are entitled to dismissal of Plaintiff's Fourteenth Amendment Due Process claims regarding Plaintiff's CPS certification and CPS prison job.

### C. **Conspiracy Claim**

To the extent Ray intends to bring a conspiracy claim under 42 U.S.C. §§1983 and 1985, it also fails. To state a claim for conspiracy under section

1983, a plaintiff must allege "persons acting under color of state law reached an understanding to deprive him of his constitutional rights." Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020) (quoting Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 293-94 (3d Cir. 2018) (internal quotation marks and citation omitted)). This requires "state actors took 'concerted action' based on an 'agreement' to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights." Id. (citing Jutrowski, 904 F.3d at 295). However, even accepting Plaintiff's allegations that an agreement existed among Defendants to transfer him or to deprive him of his constitutional right to CPS Certification and CPS job, as analyzed above, there is no such deprivation as alleged. Having failed to plausibly allege a violation of his right to prison employment or to be housed in any particular prison, a claim for conspiracy to violate the right fails. Schlager v. Beard, 398 F. App'x 699, 702 (3d Cir. 2010) (citing Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999), superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist., 585 F.3d 727 (3d Cir. 2009)).

    To state a conspiracy, claim under section 1985(3), Plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person

or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997). Plaintiff fails to sufficiently allege any of these elements, including Defendants being motivated by a racial or class-based discriminatory animus to deprive him of equal protection of the law. Whitehead v. Wetzel, 720 F. App'x 657, 662 (3d Cir. 2017). Any claim under section 1985(3) fails and Plaintiff's claims of conspiracy will be dismissed.

**V. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motions to dismiss Plaintiff's Fourteenth Amendment Due Process claims and Plaintiff's conspiracy claims. Defendants Goyne, Lukashenski, Miller and Ransom will be dismissed from the above captioned action for lack of personal involvement. The DOC Defendants' motion to dismiss will be denied as to Plaintiff' First Amendment retaliation claims.

A separate Order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 30, 2022**
20-1697-01

- 24 -